UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Private Jet Services Group, LLC</u>,
    Plaintiff

    v.                                      Case No. 20-cv-1015-SM
                                              Opinion No. 2025 DNH 091

<u>Tauck, Inc.</u>,
    Defendant

**O R D E R**

Earlier this year the court resolved the parties' dispute when it entered summary judgment in favor of PJS on Count One of its complaint, and in favor of Tauck on Count Two of that complaint. Invoking a fee-shifting provision of the parties' contracts and pointing to its (modest) success on the merits, PJS now seeks an award of more than $181,000 in costs and attorney's fees. Tauck does not dispute that PJS is contractually entitled to a fee award. It does, however, object to the magnitude of the award sought.

For the reasons discussed and as specifically limited below, PJS's motion for an award of attorney's fees is granted in part and denied in part.

**Background**

The facts underlying this case and its procedural history - which included litigating a certified question of law before the New Hampshire Supreme Court - have been discussed at length in several earlier orders and need not be recounted. It is sufficient to note the following.

PJS filed suit in October of 2020, seeking damages for Tauck's alleged breach of contract. The parties' contracts contemplated that PJS (a private aircraft booking company) would arrange for a dedicated aircraft with which Tauck (a provider of domestic and foreign guided tours) would conduct a minimum of fifty (50) tours of New Zealand per season, from 2019 through 2022. In Count One of its complaint, PJS sought $266,200 in damages it claimed to have sustained during the 2019 tour season, when Tauck used its services for only 48 tours. In Count Two, it sought nearly $1.7 million in damages arising out of the 2020 tour season when Tauck used its services for only 23 tours (that tour season was cut short by the worldwide COVID-19 pandemic and New Zealand's related decision to close its borders to all foreign travelers).

So, in sum, PJS sought a total of $1,965,391 in damages. It recovered only $144,000, or roughly seven percent (7%) of the

amount sought.  The damages PJS recovered related solely to Count One of its complaint.  PJS did not prevail on its most significant claim (the one that required, among other things, more than a year of litigation before the New Hampshire Supreme Court).

## Discussion

In support of its motion for an award of attorney's fees, PJS invokes section 17 of the parties' Blanket Purchase Agreement (BPA), which provides:

> **Attorney's Fees**. In the event of any controversy, claim, or dispute between the parties to the BPA, arising or relating to the BPA, the Standard Terms and Conditions, and/or any flights covered under the foregoing, the <u>prevailing party</u> shall be entitled to recover <u>reasonable</u> attorney's fees and cost of suit.

Blanket Purchase Agreement (document no. 21-3) at para. 17 (emphasis supplied).  As noted above, Tauck does not seriously dispute that PJS was, in a limited sense, the "prevailing party."  Instead, it focuses on an assessment of what a "reasonable" fee award might be under the circumstances.

Although PJS recovered only a small fraction of the total damages it sought from Tauck, it seeks reimbursement of all of the costs and attorney's fees it incurred over the roughly five years that this litigation has been ongoing - an amount totaling

3

$181,757.68 ($2,498.68 in costs and $179,259.00 in attorney's fees). That is not a realistic request. See, e.g., Funtown USA, Inc. v. Town of Conway, 129 N.H. 352, 356 (1987) ("Where the unsuccessful claims are unrelated to the other claims, no fee should be awarded for services rendered thereon."). See generally Kinetic Sys., Inc. v. IPS-Integrated Project Servs., LLC, No. 20-CV-1125-SM, 2025 WL 904453, at *6 (D.N.H. Mar. 24, 2025) (declining to award attorney's fees for work performed on unsuccessful claims and reducing the overall fee award to reflect plaintiff's limited success on the merits).

Although PJS acknowledges that it prevailed solely on the first count in its complaint and did not prevail on the second count, it argues that:

> The only fees fully separable between Count I and Count II is the time spent on the question this Court certified to the New Hampshire Supreme Court, which was approximately $44,000 in fees.
>
> The remaining ~$135,000 cannot be meaningfully separated given that discovery requests, depositions, and summary judgment motions covered both counts.

Reply Memorandum (document no. 87) at paras. 5-6. The court disagrees.

Count One of the complaint involved a straight-forward breach of contract claim that required only a resolution of the

4

parties' differing interpretations of the contract language. Count Two, on the other hand, related to a completely separate breach of contract claim that presented far more complex questions of both fact and law.  Those questions occupied much of the parties' briefing to this court including, but not limited to, both the first and second rounds of summary judgment motion practice.  Given the circumstances, determining a reasonable fee requires more than simply subtracting from the total amount claimed those legal fees related solely to the work performed on the certified question of law before the New Hampshire Supreme Court.

Moreover, although PJS acknowledges that it is not entitled to all fees incurred over the course of this litigation and it concedes that at least $44,000 must be subtracted from the amount recoverable, it nevertheless seeks reimbursement for all fees incurred.  See Reply Memorandum, Request for Relief (seeking all $181,757.68 in costs and attorney's fees incurred). An explanation for that anomaly is not apparent in the briefing.

Finally, it is worth noting that PJS has not supplemented its ambitious fees request with any supporting documentation (e.g., statements of hours worked on particular issues, lists of the attorneys' who performed such work, their billing rate, some

5

evidence that those billing rates are reasonable and customary within the local legal community, etc.).  Instead, PJS simply says that it "will file under seal invoices necessary to demonstrate that amount at the Court's request," Motion for Attorney's Fees at para. 8, and "as necessary, PJS will be available to brief the issue further," id. at para 10 (emphasis supplied).

PJS bears the burden to establish its entitlement to fees and the proper amount of any such award.  The process for doing so is well-established and the evidence necessary to support a fees request is well-understood.  It is not the court's role to tell PJS what arguments or documents would assist its cause, or to request that PJS supplement the record in any particular way.

Given the undeveloped briefing and evidentiary support, the court cannot conclude that the requested award of fees and costs in the amount of $181,757.68 could possibly be warranted.  The most the court can do at this point is grant PJS's request for attorney's fees in principle, but deny its request for an award in the amount requested (or any other amount).  A significant amount of work needs to be performed before any final award can be made - and that work must, at least in the first instance, be performed by PJS.  See generally Couture v. Mammoth Groceries,

6

Inc., 117 N.H. 294, 296 (1977) ("Relevant factors in the determination of reasonable fees include the amount involved; the nature, novelty, and difficulty of the litigation; the attorney's standing and the skill employed; the time devoted; the customary fees in the area; the extent to which the attorney prevailed; and the benefit thereby bestowed on his clients."). See also Town of Barrington v. Townsend, 164 N.H. 241, 250 (2012) (same) (citing Funtown, 129 N.H. at 352).

## Conclusion

In light of the foregoing, PJS's Motion for Attorney's Fees and Costs (**document no. 84**) is granted to the limited extent that the court agrees that PJS is entitled to some modest award of reasonable fees and costs pursuant to paragraph 17 of the parties' Blanket Purchase Agreement and related to legal work performed on Count One of the complaint. The amount of that award remains to be determined.

Within sixty (60) days, PJS shall provide Tauck with the legal and factual arguments, as well as all documents, it believes support its entitlement to a particular award of fees and costs. The parties shall then meet and confer in an effort to reach an agreed-upon sum. When they do so, the parties are urged to consider the following:

- Although PJS was the prevailing party, that status applies only with regard to Count One of its complaint and its success on that claim was limited;

- PJS's request for fees should <u>not</u> include charges for work related to the common law doctrines of impracticability/impossibility or frustration of commercial purpose, whether before this court or the New Hampshire Supreme Court;

- nor should PJS's request relate to work performed on discovery, research and/or briefing any other arguments related to Count Two of its complaint.

Upon reaching an agreement on the appropriate amount of fees to be awarded to PJS, the parties shall notify the court, which will enter an appropriate order.

Failing such an agreement, PJS shall submit to the court a properly-supported motion (including any stipulated facts to which the parties have agreed, such as the reasonableness of billing rates, hours reasonably expended, etc.) for an award of fees and costs in an amount that is both reasonable and supported by the record.  Within 21 days thereafter, Tauck will submit a properly-supported objection, in which it proposes an alternate fee award that it accepts as reasonable and supported by the record.  The court will then determine an appropriate award.

**SO ORDERED.**

                                                     _____
                                                     Steven J. McAuliffe
                                                     United States District Judge

August 11, 2025

cc:   Counsel of Record